624 F.Supp. 434 (1985)
Betsy FARLOW, Plaintiff,
v.
UNIVERSITY OF NORTH CAROLINA, Through ITS BOARD OF GOVERNORS; William Friday, President of the University of North Carolina in his official capacity; Western Carolina University; and Harold Robinson, Chancellor of Western Carolina University in his official capacity, Defendants.
No. C-84-18-D.
United States District Court, M.D. North Carolina, Durham Division.
December 24, 1985.
*435 John W. Gresham and Leslie J. Winner, Charlotte, N.C., for plaintiff.
Thomas J. Ziko, N.C. Dept. of Justice, Raleigh, N.C., for defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
ERWIN, District Judge.
The court conducted a trial of this action without a jury at the September 26 through October 1, 1985 Civil Session at Greensboro. Plaintiff, a tenured associate professor in the Music Department of Western Carolina University, brought this action pursuant to Title VII, 42 U.S.C. § 2000e et seq., alleging that she was sexually discriminated against in her 1980 application for promotion to full professor. Additionally, plaintiff alleges that she was retaliated against in defendants' failure to promote her to full professor after plaintiff's 1981 application. Defendants contend that plaintiff did not meet the minimum qualifications for promotion and deny any sexual animus or retaliation on their part.
Having fully considered the oral and documentary evidence presented by the parties and after hearing argument of counsel for the parties, the court enters its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

Findings of Fact
1. Plaintiff, a white female, is employed as an associate professor of music in the Department of Music at Western Carolina University (WCU).
2. Defendant Western Carolina University is one of the sixteen constituent institutions of the University of North Carolina. During the time pertinent to this action, defendant William Friday was President of the University of North Carolina, and defendant Harold Robinson was Chancellor of Western Carolina University. The individual defendants are sued in their official capacities only.
3. Plaintiff began her employment at WCU in 1968 as an assistant professor of music. In 1969, she received her Ph.D. degree in Music History from the University of North Carolina at Chapel Hill. In 1971, plaintiff was granted tenure at WCU. In 1972, plaintiff was promoted to associate professor.
4. At the time of plaintiff's promotion to associate professor, her primary teaching *436 duties were to teach music history. Additionally, plaintiff taught music appreciation and occasionally piano.
5. Upon request of their department head, plaintiff and Mr. Richard Trevarthen, an associate professor of music theory, investigated the possibility of instituting a new curriculum in the Music Department.
6. This new curriculum, the Comprehensive Musicianship (CM), required the integration of traditional music history courses and traditional theory courses with other components of the curriculum, such as voice training.
7. Plaintiff and Mr. Trevarthen researched and developed a curriculum for use at WCU. In the Spring 1973, the Music Department faculty voted to establish a Comprehensive Musicianship Curriculum and assigned to plaintiff and Mr. Trevarthen the responsibility of implementing the curriculum change. This responsibility was in addition to plaintiff and Mr. Trevarthen's teaching duties and required a substantial expenditure of time. The Comprehensive Musicianship Curriculum was implemented in 1974.
8. Plaintiff and Mr. Trevarthen developed a loose-leaf text for the CM curriculum. The text was revised and rearranged after 1977 to meet the requirements of Dr. Thomas Tyra, the head of the Music Department, as well as to reflect curriculum changes. Plaintiff provided the history portions of text. She also edited and synthesized materials prepared by Mr. Trevarthen, typed the manuscripts, and coordinated the printing of the texts at WCU. Mr. Trevarthen wrote the music theory portions and the accompanying musical illustrations. Although WCU students used the text as part of their course work, the text was never published.
9. In the Spring 1973, plaintiff presented a paper to the American Musicological Society on the "Aspect of Gospel Music."
10. In the Spring 1978, plaintiff received a grant from the National Endowment for the Humanities for an eight-week summer seminar at Ohio State University. Plaintiff presented a paper at the seminar.
11. Plaintiff co-authored a paper in the Spring 1980 with Mr. Trevarthen entitled "Comprehensive Musicianship: A Practical Reality?" and presented the paper to the South Central Chapter of the American Musicological Society. Plaintiff also presented several papers to the Popular Culture Association.
12. Neither plaintiff's research on the harpsichord while touring Europe in the Summer 1980 nor her research on "white Gospel music" resulted in publication.
13. In September 1980, plaintiff submitted an application for promotion to full professor. This is the highest faculty rank awarded at WCU.
14. All faculty promotions at WCU are governed by the standards and procedures set out in The Code of the Board of Governors of the University of North Carolina (The Code), The Tenure Policies and Regulations of Western Carolina University (WCU Tenure Policies), the Faculty Handbook of Western Carolina University (Faculty Handbook), and, in the case of faculty in the Department of Music, the Department of Music Procedures and Criteria for Appointment, Reappointment, Non-Reappointment, Tenure and Promotion Recommendations (Department of Music Procedures).
15. As well as providing the substantive guidelines for promotion, these governing documents also specify the administrative procedure by which a faculty member's application for promotion will be reviewed. Each candidate's application is independently reviewed to determine whether he or she has developed a record of professional achievement which would merit the recognition which comes with promotion.
16. Plaintiff's 1980 application was considered by the Department of Music Personnel Committee on October 28, 1980. After discussing plaintiff's application, the committee voted five to one to recommend her promotion to professor. Dr. Tyra, head of the Department of Music, also recommended *437 that plaintiff be promoted to professor, although with reservations regarding plaintiff's lack of scholarly publications.
17. Plaintiff's application next went to the School of Arts and Sciences Advisory Committee on Tenure and Promotion (School Committee), a committee of twelve faculty members from the School of Arts and Sciences. Six members are elected and six are appointed by Dr. John McCrone, Dean of the School of Arts and Sciences. The Dean serves as the non-voting chairman of the committee. Dr. Tyra served on the School Committee for the 1980-81 academic year along with nine other males.
18. After a short presentation of plaintiff's application by Dr. Tyra and a brief discussion by the committee members, the School Committee voted three to eight against recommending plaintiff for promotion. In accordance with established procedures, Dean McCrone and Dr. Tyra abstained from voting.
19. Plaintiff's failure to publish any scholarly work in an academic journal was the basis for the School Committee's recommendation against promotion to full professor.
20. Dean McCrone concurred with the School Committee's recommendation and recommended that plaintiff not be promoted to full professor. His decision was based on his opinion that plaintiff had failed to establish an appropriate record of professional development.
21. A subsequent review by the University Wide Committee on Tenure and Promotion (University Committee), the University Committee chairman, Vice Chancellor Robert Stoltz, and Chancellor Robinson resulted in defendants' denial of plaintiff's application for promotion to full professor.
22. In accordance with her rights, plaintiff filed a written request for appeal with the Chancellor's Office on March 14, 1981. In her Notice of Appeal, plaintiff complained that the decision not to promote her was not based on a fair evaluation of her qualifications, but rather on her sex and without proper consideration of WCU's affirmative action obligations.
23. Plaintiff met with Dean McCrone on March 30, 1981 to discuss her application and Dean McCrone's recommendation that she not be promoted. In spite of plaintiff's insistence, Dean McCrone refused to compare plaintiff's qualifications with those of Mr. Trevarthen, who had applied for promotion the same time as plaintiff and who had, in fact, been promoted to full professor. The discussion became heated, and plaintiff began to cry. Dean McCrone apologized and stated to plaintiff that he frequently did the same thing to his wife.
24. Plaintiff supplemented her original application and had another faculty member, Dr. Temple Smith, present her case for promotion at the appeal before the School Committee on April 9, 1981. In response to a question at the appeal meeting, Dr. Tyra stated that in his opinion, Mr. Trevarthen's contribution to the CM text was more original and creative than plaintiff's contribution to the music history portion of the text.
25. During the appeal process, plaintiff met with Vice Chancellor Stoltz several times to express her concerns that proper credit was not given to her contributions to the CM text and that Mr. Trevarthen was promoted even though he possessed comparable qualifications as plaintiff.
26. After plaintiff's appeal was denied, she filed a grievance with the WCU Grievance Committee. Plaintiff asserted, inter alia, that Vice Chancellor Stoltz and Dean McCrone had failed to assure that WCU's affirmative action goals were properly considered when reviewing her application for promotion and that Dr. Tyra had unfairly represented her qualifications for promotion to the School Committee. Dean McCrone, Vice Chancellor Stoltz, and a majority of the School Committee members responded to the grievance.
27. The Grievance Committee decided that it did not have jurisdiction over plaintiff's claim that WCU had failed to follow its affirmative action plan when it decided not to promote her in 1980-81.
*438 28. Dr. Tyra made several sexist remarks to Dr. Joyce Farwell, a female faculty member in the Music Department, that reveal sexual animus on his part. Specifically, Dr. Tyra informed Dr. Farwell when she complained about not having a full-time position while teaching a full course load that if she was not happy with her position she "could always sell her body." Additionally, Dr. Tyra commented after a performance by Dr. Farwell that her work "wasn't bad for a broad."
29. Although WCU's affirmative action plan required so, no committee on women and minorities existed at the University.
30. The promotion of two male faculty members, Mr. Raymond Nelson in 1977-78 and Mr. Jack Barnette in 1978-79, does not support a finding of sexual discrimination, although neither men possessed a doctorate degree or any publications in refereed journals. Both men were members of the School of Business, and both were promoted before the upgrading of standards for promotion at the University. These factors make comparisons to plaintiff impossible.
31. Mr. Trevarthen's work as an arranger has earned him a considerable reputation throughout the Southeast.
32. Plaintiff again applied for promotion to full professor in the 1981-82 school term. She received a unanimous vote of support from the Department Committee, along with Dr. Tyra's recommendation. However, the School Committee, which included seven members from the previous year, voted eight to three to advise against promotion.
33. The School Committee members were aware of plaintiff's previous grievance and appeal charging sexual discrimination in the decision not to promote plaintiff to full professor.
34. After exhaustion of the administrative process for promotion, plaintiff's 1981 application for promotion to full professor was also rejected.
35. Plaintiff did not produce any scholarly work that resulted in publication between her 1980 and 1981 applications for promotion to full professor.
36. The decision not to promote plaintiff in 1981-82 was based on the fact that no significant change existed in plaintiff's record for professional development.

Discussion

Sexual Discrimination Claim
In a discriminatory employment case under Title VII, the plaintiff must carry the initial burden of establishing a prima facie case of racial discrimination. Once the plaintiff has established a prima facie case, the burden shifts to defendant to articulate legitimate, non-discriminatory reasons for the employment action. If the defendant carries its burden, then the plaintiff must show that the reasons offered by the defendant are not true, but are a pretext for discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980).
Plaintiff attempts to create an inference of sexual animus that would support a finding of sexual discrimination by showing that the two male decision-makers, who had the greatest role in the promotion decision, made specific sex-based derogatory comments about female faculty members. The court is particularly disturbed at the offensive (and undisputed) comments made to Dr. Farwell, a female faculty member, by Dr. Tyra, head of the Music Department. These comments well support a finding of sexual bias on the part of Dr. Tyra.
Additionally, plaintiff attempts to create an inference of sexual discrimination by showing that defendants failed to implement their affirmative action plan. Indeed, the court finds that defendants did not follow their own affirmative action plan. Such failure served to relax the University's general attitude toward eliminating racial and sexual bias.
However, in order for plaintiff to ultimately prevail on her first claim in which she alleges that she was sexually *439 discriminated against in her 1980 application for promotion to full professor, she must show that she met minimum qualifications for appointment as a full professor and was not promoted and that defendants promoted males with similar qualifications as she. Smith v. University of North Carolina, 632 F.2d 316 (4th Cir.1980). Thus, the issues before the court are whether plaintiff possessed minimum qualifications for promotion to full professor and whether defendants promoted males with similar qualifications as plaintiff.
After a careful review of the record, the court concludes that plaintiff did not meet the minimum qualifications for promotion to full professor. Plaintiff failed to demonstrate a sufficient record of professional development through scholarly research and publication. Although plaintiff's contribution to the Comprehensive Musicianship Curriculum program and text was a significant professional endeavor, it did not compensate for the lack of scholarly publication.
The court's subsequent inquiry is whether defendants promoted males with similar qualifications as plaintiff. The court holds that defendants did not do so. Plaintiff's primary comparative is Mr. Richard Trevarthen, another faculty member in the Music Department, who was promoted to full professor in 1980-81. Plaintiff and Mr. Trevarthen hold different roles in music education; plaintiff is a music historian, and Mr. Trevarthen is a music theorist. Consequently, the standard for evaluation of each one's professional development will differ. Although Mr. Trevarthen possessed neither a doctorate degree nor scholarly publications, he demonstrated sufficient record of professional development as a music theorist. The court finds Mr. Trevarthen's body of creative works, both original compositions and arrangements, impressive.

Retaliation Claim
Plaintiff contends that defendants' failure to promote her to full professor in 1981 was in retaliation for her charge of sexual discrimination. Providing guidance as to the governing law of Title VII retaliation cases within this circuit, the court in Ross v. Communications Satellite Corp., 759 F.2d 355, 365-66 (4th Cir.1985), held that in order for an employee to disprove a legitimate, non-discriminatory explanation for adverse action, the employee must show that the adverse action would not have occurred "but for" the protected conduct. Stated in the converse, defendants must show that plaintiff would not have been promoted to full professor in 1981 in any event. The court finds that there was no significant change from plaintiff's 1980 application to her 1981 application. Having already found that plaintiff did not meet the minimum qualifications for promotion to full professor from her 1980 application, the court now finds that plaintiff would not have been promoted to full professor in any event in 1981.

Conclusions of Law
1. All parties are properly before the court, and the court has jurisdiction over this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Western Carolina University is an employer within the meaning of 42 U.S.C. § 2000e(b).
2. This is an individual treatment case. Two issues are before the court. The first issue is whether defendants discriminated against plaintiff on the basis of her sex in its failure to promote her to full professor in 1980-81. The second issue is whether defendants retaliated against plaintiff because of her complaints of alleged sexual discrimination.
3. The court finds that plaintiff has established a prima facie case of sexual discrimination.
4. Defendants, however, have articulated legitimate, non-discriminatory reasons for its decision not to promote plaintiff to full professor in 1980-81.
5. Plaintiff has failed to meet her burden of proof by a preponderance of the evidence that defendants violated Title VII *440 with respect to defendants' failure to promote her in 1980-81.
6. The court finds that plaintiff has established a prima facie case of discrimination in retaliation for the filing of complaints of sexual discrimination to the Chancellor's Office.
7. Defendants, however, have articulated legitimate, non-discriminatory reasons for its decision not to promote plaintiff to full professor in 1981-82.
8. Plaintiff has not met her burden of proof by a preponderance of the evidence that defendants violated Title VII by retaliating against her for complaints of alleged sexual discrimination.
A Judgment will be filed contemporaneously with these Findings of Fact and Conclusions of Law dismissing this action with prejudice as to the defendants and without the assessment of costs.