915 F.2d 1565
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Samuel MILLNER, Jr., Plaintiff-Appellant,
v.
FIELDCREST MILLS, INC., Defendant-Appellee.
 No. 89-1791.
 United States Court of Appeals, Fourth Circuit.
 Argued April 2, 1990.
Decided Oct. 4, 1990.
As Amended Nov. 6, 1990.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. N. Carlton Tilley, Jr., District Judge. (CA-88-762-C)
 Stephen S. Schmidly, Sr., Moser, Ogburn, Heafner, Schmidly & Wells, Asheboro, N.C., for appellant.
 Harley Harrell Jones, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N.C. (Argued) for appellee; M. Ann Anderson, Womble, Carlyle, Sandridge & Rice, Winston-Salem N.C., on brief.
 M.D.N.C.
 AFFIRMED.
 Before DONALD RUSSELL, WIDENER and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this lawsuit, Samuel Millner claimed that his employer, Fieldcrest Mills, wrongfully denied him promotions in retaliation for his prior EEOC activity, in violation of Title VII, 42 U.S.C. Sec. 2000e-3. The district judge granted Fieldcrest's summary judgment motion dismissing the suit, holding that (1) Millner had failed to establish a prima facie case of discrimination, and (2) even if a prima facie case had been presented, Millner had produced no evidence of discrimination to rebut Fieldcrest's nondiscriminatory reason for firing him. Millner appealed to this court, claiming that both findings were erroneous. We affirm, largely upon the reasoning in the memorandum opinion of the district judge.
 
 I.
 
 2
 Millner was employed by Fieldcrest in various supervisory positions in the Bedspread Finishing Plant from 1973 until 1985, when that plant was closed and Millner and many other employees were laid off as a result of the closing of the plant. Because of this lay-off, Millner, who is a black male, filed charges of racial discrimination by Fieldcrest with the EEOC. The EEOC found no basis for the charges, but issued Millner the right-to-sue letter. He then filed a case in federal district court. Millner v. Fieldcrest Mills, Inc., CA-86-190-G (M.D.N.C.1986). Fieldcrest later settled these charges with Millner, promising to consider Millner for any permanent positions that should come open later.
 
 
 3
 In July of 1986, Millner was rehired as a temporary hourly employee in Fieldcrest's Blanket Finishing Plant. Two permanent supervisory positions subsequently came open, and Millner was not selected to fill either position. Millner later filed this suit, claiming that he was not selected for either position in retaliation for his prior EEOC activity.
 
 
 4
 The first of the two supervisory positions that came open was Supervisor of the Beck Dyeing Department in the Bedspread Finishing Plant, in April of 1987. Fieldcrest claimed that it considered Millner for this position, along with two other employees. Ultimately, Wilbert Price, also a black male, was awarded the job. Fieldcrest Plant Manager Fred Robertson testified below that Price was hired because Price had several years' experience in the Blanket Finishing Department in both hourly and supervisory jobs and that Price was well liked by his fellow workers and supervisors. Robertson admitted that he had been aware of Millner's prior EEOC activity. Robertson testified that although Millner did have significant experience, Millner was not well liked or respected by his fellow employees. Robertson claimed that Millner had exhibited a "know-it-all" attitude toward his fellow employees and had a habit of ordering them around without any authority. That Millner had difficulty with other employees was confirmed by other evidence and was in fact admitted to some extent by Millner himself. There were several incidents established where Millner's conduct created difficulties in the department. Specifically, he had acted on occasion as if he were the supervisor, taking over the supervisor's authority. Millner was talked to about this, and he apologized for his conduct to the supervisors. On another occasion, he noted what he said was that some second-grade goods were being sent out as first-grade. Instead of taking up the matter with the supervisor in charge, Millner went over the supervisor's head and reported the incident to the vice-president of the company. The supervisor concerned disputed that there was any attempt to palm second-grade blankets off as first-grade and charged that Millner was simply trying to blacken the supervisor's record in his own quest for a promotion. Without pursuing the matter further, it is clear that Millner's relationship with others was not an easy one. Actually, when he was attempting to qualify for promotion, Millner was told that he needed to improve his relations with other employees. He seemed not to have profited from this counseling. In addition to this alleged problem, the record demonstrated that Millner was unwilling to follow the chain of command and that he had a habit of cutting past his superiors in order to take his various complaints to senior management. Millner was not given the supervisory position because it was feared that he could not be effective with employees given his attitude and reputation. It also appeared that Price's experience clearly gave him better qualifications for the job than Millner, as the district judge found.
 
 
 5
 In November of 1987, the second position came open--a shift supervisory position in the Packaging Department. The Superintendent of Inspect, Cut, Sew and Packaging, Edward Spivey, was in charge of filling this position. Spivey stated that he was aware of Millner's prior EEOC activity at the time that he was filling this position. The position was given to Riley Wilson, a black man, instead of Millner. Spivey willingly stated that Millner had more relevant experience than Wilson. However, Spivey also testified that Millner was not selected to fill this position because Millner had a history of problems working with other supervisors who have frequent contact with the supervisor of the Inspect, Cut, Sew and Packaging Department. Also, Millner had exhibited to Spivey a habit of issuing orders to other hourly employees without authority to do so and in contradiction of orders issued by the supervisors of those employees. In fact, Spivey testified that he recommended to Plant Manager Robertson that Robertson meet with Millner due to this bossy attitude.
 
 
 6
 Millner denied these allegations by Fieldcrest, yet his evidence was scant. No substantive evidence was offered by Millner that the reason assigned by the employer for failure to promote Millner was pretextual. Nor did he offer any direct evidence that Fieldcrest had denied him promotions in retaliation for Millner's prior EEOC activity. Millner was able to produce some Fieldcrest memoranda that contain marginal notes which may indicate that he was not considered for the position of Dyehouse Supervisor (Fieldcrest countered with testimony by management officials that Millner was considered). As noted above, Millner also demonstrated that those Fieldcrest managers who were in charge of making promotions were aware of his prior EEOC activity. However, Millner did not produce any material evidence to counter the allegations regarding his tendency to boss around his equals, his abrasive personality, or his history of bucking the chain of command in order to take his complaints straight to the top. Also, while Millner produced evidence establishing his prior supervisory experience, he could not deny the solid credentials of those who were eventually selected.
 
 II.
 
 7
 The burdens of proof in a Title VII case were restated thoroughly in Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir.1985). First, the plaintiff must come forward with a prima facie case of retaliatory discharge. If that is accomplished, the defendant-employer must assert a "legitimate nondiscriminatory reason for the adverse action, thereby rebutting the presumption of retaliation raised by the prima facie case." If that burden is satisfied, then the employee has the burden of proving that the employer's reason is pretextual. The employee must prove that "but for" the employee's activity, the adverse action would not have been taken. Id., at 365. See also Dwyer v. Smith, 867 F.2d 184 (4th Cir.1989) (reaffirming the but for test.*
 
 
 8
 As for the summary judgment motion, "the district court must perform a dual inquiry into the genuineness and materiality of any purported factual issues." Ross, 759 F.2d at 364 (emphasis in the original). "[T]he nonmoving party must produce 'specific facts showing that there is a genuine issue for trial,' rather than resting upon the bald assertions of his pleadings." Id., quoting Fed.R.Civ.P. 56(e). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement." Id. Because motive is often the determination in a Title VII case, care must be exercised in the consideration of a summary judgment motion. However, this "does not mean that summary judgment is never an appropriate vehicle for resolution." Id. at 365, quoting International Woodworkers of America v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1272 (4th Cir.1981) (emphasis in the original).
 
 
 9
 The district court granted summary judgment. We find that such judgment was properly granted. The record shows that finding was in accordance with a fair reading of the record. Millner produced no direct evidence of retaliatory discharge, and he could not substantially contest Fieldcrest's reasons for not promoting him. Millner also produced no circumstantial evidence of retaliatory discharge, aside from noting that his supervisors were aware of his prior EEOC activity and offering some evidence to support his contention that he was not actually considered for the position of Dyehouse Supervisor. Although it is not clear whether Millner was given formal consideration for this promotion, that sole conflict in the evidence is a red herring. Millner has not sued for breach of contract for failure to give him consideration for a supervisory position; he has sued claiming retaliatory action for filing an EEOC claim. As noted in Goldberg v. B. Green and Co., 836 F.2d 845, 849 (4th Cir.1989), the plaintiff must go beyond the inference of a mere arbitrary decision by the defendant and offer some proof of retaliatory discharge in order to ultimately prevail. We cannot presume that any action taken by an employer that is contrary to an employee's aspirations is retaliatory, merely because it is shown that the employer was aware of the employee's prior EEOC activity. See Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989). Yet, in order to reverse the grant of summary judgment in this case, we would have to recognize an unrebuttable presumption of discrimination in favor the plaintiff in that instance. We cannot do so.
 
 
 10
 Accordingly, the granting of summary judgment for the defendant by the district court is
 
 
 11
 AFFIRMED.
 
 
 
 *
 The recent Supreme Court case of Price Waterhouse v. Hopkins, 109 S.Ct. 1775 (1989), does not affect this test. In this case, the Supreme Court attempted to determine which party carried the various burdens of proof in "mixed motive" cases. In these cases, it is established that an impermissible factor played a part in the employer's decision-making process, but the employer maintains that the same action would have been taken for legitimate reasons, regardless, even if the impermissible factor had not been considered. A majority of the Court agreed that the "but for" test, like the one set forth in Ross, is not appropriate in these mixed motive cases. However, the majority could not agree on the allocation of the burdens of proof, or the nature of the proof required. A four-man plurality offered one standard, and Justices White and O'Connor each proposed a different standard. Regardless, since this is not a "mixed motive" case, Price Waterhouse does not apply