Carol **RUDOLPH**, Plaintiff,

v.

**HECHINGER COMPANY**, Defendant.

Civ. A. No. PJM 93–2719.

United States District Court,
D. Maryland.

April 27, 1995.

John Wadie Hermina, Laurel, MD, for plaintiff.

Joshua R. Treem, Harry Levy, Baltimore, MD, Thomas Patrick Murphy, Washington, DC, for defendant.

## OPINION

MESSITTE, District Judge.

### I.

This is another case, of a type seen with increasing frequency in federal courts, in which an employee seeks to transform arguably harsh treatment by an employer into a claim of statutory discrimination. Beyond pure speculation, however, the evidence in no way suggests that the employer's actions were unlawfully discriminatory, a burden of proof which the employee ultimately bears. Plaintiff Carol Rudolph has brought this suit against her former employer Hechinger Company, alleging discrimination on the basis of sex and pregnancy, in violation in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Hechinger's Motion for Summary Judgment, which Rudolph opposes, will be granted.

### II.

Hechinger's is a publicly held company which operates retail do-it-yourself home centers in Washington, D.C., Maryland, Virginia, North Carolina, Pennsylvania and New York, Ohio, Delaware, New Jersey and Connecticut. Rudolph began her employment with Hechinger's as a part-time cashier in its Rockville, Maryland, store in 1975. She was transferred to Hechinger's Alexandria, Virginia, facility, where she trained as a bookkeeper in a full-time position. By 1991, located in Richmond, she had progressed to the position of loss prevention supervisor for Hechinger's stores in the Richmond/Tidewater, Virginia geographical region.[1] In this position she was responsible for preventing store losses, whether in the form of inventory or cash, at the stores assigned to her.

In March of 1992, Rudolph, unmarried at the time, was pregnant. She worked until March 27 before taking leave for the birth of her child, who was born on April 3. She did not return to her job until June 15, 1992. On that date, Tom Riley, a loss prevention regional manager for Hechinger's, and Carol Stevens, the company's Vice–President of Human Resources, met with Rudolph and informed her that her loss prevention supervisor position had been eliminated, that her employment was over. Rudolph's request to be demoted to loss prevention coordinator was denied.

At the time Rudolph went on maternity leave, Hechinger's was in the process of closing a number of its stores in the Tidewater region. By January of 1992, closures had taken place in all its stores in North Carolina as well as in Harrisonburg and Newport News, Virginia. All other stores in the Richmond/Tidewater area were being considered

---

1. Specifically the number and location of the stores assigned to Rudolph were:
   1) No. 71—Tidewater, Virginia
   2) No. 72—Tidewater, Virginia
   3) No. 73—Richmond, Virginia
   4) No. 74—Richmond, Virginia
   5) No. 75—Fredericksburg, Virginia
   6) No. 78—Richmond, Virginia

for closure. Prior to her leave, Stevens was aware that such closures were in process.

Riley, aware that stores in the Richmond/Tidewater area were going to close, also needed to make arrangements to cover Rudolph's store during her absence. Accordingly, Stores No. 71 and 72 were permanently reassigned to Alfred Baird, a second loss prevention supervisor responsible for the Richmond/Tidewater market, primarily North Carolina. Riley knew that Baird, having closed nine stores in the past, was experienced in that regard. The two Tidewater stores were in fact closed in July 1992. Rudolph's Richmond stores, Nos. 73, 74 and 78, as to which a final decision on closure had not been made when Rudolph went on leave, were temporarily assigned to Baird.[2] These stores ultimately closed in January 1993.

Prior to departing on leave, Rudolph discussed with Riley the possibility that, due to store closings, her position might be eliminated. As it happened, Hechinger's acted on that possibility while Rudolph was away, deciding to terminate both her and Baird. Loss prevention coverage for the Richmond/Tidewater market was arranged through the Washington, D.C. region, with Felton Gilliam, a loss prevention supervisor from the D.C. market, assigned to supervise the remaining Richmond/Tidewater stores until they were closed.

---

2. Store No. 75 in Fredericksburg, Virginia, was permanently reassigned, as of March 9, 1992, to a Washington, D.C.–based loss prevention supervisor, Keith Weidenhoff.

3. By memorandum dated January 28, 1991, Catherine Sharp, Hechinger's Vice–President of Human Resources, had outlined "Reduction in Force Guidelines" for corporate area and store managers. Among other things, she stated:

The primary consideration for selecting which incumbent should be surplused in a reduction in force situation should be performance over the last three (3) review periods. The weakest performer(s) among incumbents at an equivalent level within a particular department should be selected.... Although a secondary consideration, tenure should be factored into the decision as well as performance.

\* \* \* \* \* \*

When a job is eliminated completely (as opposed to a reduction in force among incumbents for a job that will remain), the incum-

Rudolph claims that, before going on leave, Stevens informed her that, if lay-offs were necessary, individuals would be selected on the basis of their past three performance reviews, with the poorest performers being selected for termination. On the basis of Hechinger's guidelines for selecting employees for lay off,[3] Rudolph contends that her performance was superior to that of Gilliam, her replacement, since she had been ranked "very good," while he had only received a "satisfactory" ranking.

On this foundation, Rudolph constructs her claim that Hechinger's decided to terminate her based upon her sex, specifically because she was an "unwed mother" and because of "her inability to relocate."[4]

### III.

Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) makes it clear that summary judgment is appropriate when there is no genuine issue of material fact that could lead a rational trier of fact to find for the non-moving party. Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir.1990) (citing Anderson, 477 U.S. at 255, 106 S.Ct. at 2513–14) reminds that "(i)n determining whether to grant summary judgment, all justifiable inferences must be drawn in favor of the non-movant." Finally, Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985) cautions that the non-

---

bent in the position will be considered the surplus employee. As with employees affected by a reduction in force, consideration should be given to re-assigning the affected employee to another position in the unit if he/she is qualified to do the job and doing so would mean that he/she "bumped" an employee with lower performance and/or shorter tenure.... The employee should be advised one (1) week before the effective date of the reduction in force or job elimination....

4. Rudolph concedes that before she went on maternity leave, Riley offered her another job in Maryland, though not a loss prevention job. She acknowledges that this job was suggested to her because of the possibility of further store closings within the company. This position is ostensibly the basis for Rudolph's claim that she was terminated due to her "inability to relocate." The Court understands this claim to be simply a restatement of the claim that Rudolph was discriminated against because of her sex and pregnancy.

moving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another. The Court reviews the instant case with these precepts in mind.

## IV.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) sets out the scheme for proving employment discrimination. The claimant must first establish a prima facie case of discrimination, after which the burden shifts to the employer to rebut the inference of discrimination by articulating a legitimate, non-discriminatory reason for its action vis-a-vis the employee. The employee must then show that the articulated reason was in fact pretextual, that the employer's intent was unlawfully discriminatory.

*McDonnell Douglas* posits two ways in which to establish a prima facie case of discrimination may be established. First, the employee may attempt to establish the case by direct evidence supporting an inference of discrimination. *See e.g. Lewis v. AT & T Technologies, Inc.,* 691 F.Supp. 915, 919 (D.Md.1988). Alternatively, the employee may meet the four-part test originally articulated in *McDonnell Douglas* in the illegal hiring context, later adapted to the illegal discharge context. *See e.g. Robertson v. Maryland State Dept. of Personnel,* 481 F.Supp. 108 (D.Md.1978). Rudolph offers no direct evidence of discrimination, seeking instead to meet the four-part test.

■ Although the parties spar over whether Rudolph's termination was a "reduction in force" (RIF) as opposed to a "market closing," for present purposes the Court will accept Rudolph's view that a RIF was involved. The four-part *McDonnell Douglas* calculus, then, adapted to the RIF situation, requires the following showing:

1) That the employee was protected under the employment discrimination statute;

2) That she was selected from the group or territory for termination;

3) That she was performing at a level substantially equivalent to the lowest level of those retained in the group or territory; and

4) That the process of selection produced a residual work force of persons in the group or territory containing some unprotected persons who were performing at a level lower than that at which the plaintiff was performing.

*See Duke v. Uniroyal Inc.,* 928 F.2d 1413, 1418 (4th Cir.1991).

■ The Court will assume for present purposes that Rudolph has made out a prima facie case by this approach. Under the *McDonnell Douglas* scheme, the burden then shifts to Hechinger's to rebut an inference of discrimination by articulating a legitimate non-discriminatory reason for Rudolph's treatment. This burden Hechinger's unquestionably meets. A number of store closings were taking place throughout Rudolph's region, actually and prospectively, at the time of her termination. Whether her termination is viewed as a result of a RIF or a market closure, the point is that Hechinger's had a reason for her dismissal that was legitimate and non-discriminatory—a reduction in work force brought about by apparently lagging sales or other operational inefficiencies. Upon that proof, any presumption of discrimination created by Rudolph's prima facie showing "drops from the case," and she bears the ultimate burden of persuasion to prove that Hechinger's intentionally discriminated against her. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). Rudolph must do more than simply disprove Hechinger's articulated reason.[5] She must instead estab-

---

5. In regard to Hechinger's articulated non-discriminatory reason, Rudolph's counsel makes an allegation which the Court rejects categorically. Rudolph's counsel suggests that she has been hindered in her ability to produce evidence to establish pretext because defense counsel has rebuffed efforts to depose Carol Stevens, Hechinger's Human Resources Manager. While defense counsel may have confused dates for Ste-

vens' deposition, it is clear that they thereafter offered several other dates to Plaintiff's counsel to take the deposition and Plaintiff's counsel declined to act.

In any case, it is not for Plaintiff's counsel to insist that adverse inferences be drawn under circumstances such as this. The Rules of Procedure provide for recourse to the Court in the

lish that the articulated reasons were a pretext. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). *See also Holder v. City of Raleigh,* 867 F.2d 823, 828 (4th Cir.1989). As the Supreme Court observed in *St. Mary's Honor Center v. Hicks,* "a reason cannot be proved to be 'a pretext *for discrimination'* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." —— U.S. at ——, 113 S.Ct. at 2752 (Emphasis in original).

While Rudolph alleges a few inconsistencies in the history of her disengagement from Hechinger's, what she does not in the least do is rebut the legitimate non-discriminatory reason that Hechinger's has proffered to support its decision to terminate her. She presents, quite simply, no evidence that consideration of sex and pregnancy played any part in the termination process. Her own opinion, without more, cannot suffice to establish either a prima facie case or pretext. *See Goldberg v. B. Green and Co., Inc.,* 836 F.2d 845, 848 (4th Cir.1988). In other words, the record is devoid of any evidence raising a genuine issue of fact that Hechinger's action in this case was in any way based on illegal discrimination. From all that appears, her claim could be equally premised on her race, age, national origin, or religion. That gender or pregnancy had anything to do with her termination is no more evident than that any of these other statutorily prohibited factors played a role.

Unfair as Hechinger's decision may seem to Rudolph, it was, as a matter of law, not discriminatory. As the Fifth Circuit observed in *Turner v. Texas Instruments, Inc.,*

555 F.2d 1251, 1257 (5th Cir.1977), "Title VII (does) not protect against unfair business decisions—only against decisions motivated by unlawful animus." Cf. *Pfeifer v. Lever Brothers Co.,* 693 F.Supp. 358, 364 (D.Md. 1987), quoting *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir. 1980) ("The ADA is 'not intended as a vehicle for judicial review of business decisions' ").

The Court concludes that Rudolph has no Title VII case and will grant Hechinger's Motion for Summary Judgment.

event that discovery is truly being frustrated, recourse which was not sought here. The Court therefore will ignore the suggestion of Plaintiff's counsel that it draw an adverse inference from the matter of Stevens' deposition.

What cannot be ignored, however, are the flurry of papers and the shrill, personal tone of counsel that have characterized this and other similar litigation involving Hechinger's. Following Hechinger's Motion for Summary Judgment, Rudolph's Opposition, and Hechinger's Reply, the Court received Rudolph's Response to Defendant's Reply, Hechinger's Supplemental Reply, and Rudolph's Reply to Supplemental Reply. The parties are advised that, unless requested by

the Court, no response to a reply brief is allowed. *See Spring Industries Inc. v. American Motorist Insurance Co.,* 137 F.R.D. 238, 240 (N.D. Texas 1991).

As to the tone of the pleadings, counsel's attention is invited to Standards for Professional Conduct adopted for the Seventh Federal Judicial Circuit, 143 F.R.D. 441, 448 (1992), No. 1:

"... In our dealings with others we will not reflect the ill feelings of our clients. We will treat all other counsel, parties and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications."