**Negussie SADO, Plaintiff,**

v.

**LELAND MEMORIAL HOSPITAL, Defendant.**

**Civ. No. PJM 94–2959.**

United States District Court, D. Maryland.

July 26, 1996.

---

Negussie Sado, Takoma Park, Maryland, Pro Se.

Richard G. Vernon, R. Dennis Osterman, Lerch, Early & Brewer, Bethesda, Maryland, for Defendant.

## OPINION

MESSITTE, District Judge.

*Pro se* Plaintiff Negussie Sado sues Defendant Leland Memorial Hospital, alleging discrimination in employment based on race and national origin pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended. Leland has filed a Motion for Summary Judgment which Sado opposes. Having considered the Motion and the Opposition thereto and the entire record herein, the Court will GRANT Defendant's Motion.

### I.

Sado, a black male of Ethiopian origin, was employed at Washington Adventist Hospital in Takoma Park Maryland, from early 1989 through February, 1992. In February, 1992 he applied for and was ultimately accepted for a night supervisory position at Leland Memorial Hospital, a nearby facility that like Washington Adventist Hospital was part of the Seventh Day Adventist Health System, the two hospitals being governed by the same administrative body and having the same President and Personnel Director.

Sado contends that his new position constituted a transfer of employment within the same hospital system while Leland characterizes it as a position at a new facility in which Sado had never worked previously. As a new employee at Leland, Sado would have been subject to an initial ninety-day probation status that could be extended by a supervisor for an additional three months. As a three-year employee transferred to a new position at Leland, he would not have been on probation.[1]

Sado claims that his supervisor at Leland, Linda Herford, contrary to Leland's policy as set out in its employee handbook and contrary to her usual practice with new employees, refused to give him orientation to the new department and his specific duties. He also claims that he was unfairly treated by being given shifting day and evening assignments as a floor therapist rather than a regular evening shift as night supervisor.

It is undisputed that Sado received an initial written evaluation from Herford on May 27, 1992, less than three months after he started work there on March 2, 1992. In the evaluation Herford noted her concern over two incidents in which Sado had made incorrect notations about patients being in hospital rooms when in fact one had been discharged from the hospital and the other had been assigned to a new room. Sado acknowledges both "mistakes" occurred but argues here that they were made by nurses under his supervision who failed to remove the patient names from the nameplates on the hospital doors. More importantly, Sado contends that neither action involved negligent patient care on his part since he had, in fact, given no care at all. Equally important, he says, no patient suffered any harm. In any event, Herford decided to extend Sado's probation for two months.

Shortly thereafter, on June 8, 1992, Sado was terminated by Christopher Pickwick, Administrative Director of Support Services at Leland, because of alleged "negligence of (his) assigned duties and responsibilities." Sado appealed his termination, which was reviewed and upheld by Leland's President, Ronald Marx.

Sado alleges that his treatment was unfair and was driven by illegal discrimination by Leland personnel based on his race and national origin. Other employees who made

---

1. Whether on probation or not, Sado was undisputably an at-will employee who could be fired for cause. Where, as here, both sides acknowledge that the termination was for cause, the issue of probation becomes irrelevant. The critical question is whether Sado's termination was due to discrimination or some other cause such as negligent patient care or administrative misfeasance on his part.

"similar mistakes more frequently," Sado alleges, were not so disciplined.

## II.

■ Summary judgment is appropriate if there is no genuine issue of material fact that could lead a rational trier of fact to find for the nonmoving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While all justifiable inferences must be drawn in favor of the nonmovant, *Miltier v. Beorn,* 896 F.2d 848 (4th Cir.1990), the non-moving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. *Beale v. Hardy,* 769 F.2d 213 (4th Cir.1985).

■ Generally speaking, *pro se* litigants are held to a less stringent standard than trained attorneys; the Court must afford a *pro se* complaint generous construction. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Such litigants with otherwise meritorious claims are not to be defeated by failure to observe technical niceties. *Gordon v. Leeke,* 574 F.2d 1147 (4th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). Nevertheless, the United States Court of Appeals for the Fourth Circuit has acknowledged limits on this principle. *Beaudett v. City of Hampton,* 775 F.2d 1274 (4th Cir.1985), *cert. denied,* 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986). A *pro se* plaintiff still must allege facts that state a cause of action. *Id.*

## III.

■ Under Title VII, it is unlawful for an employer to terminate an employee on the basis of the employee's race or national origin. 42 U.S.C. 2000e *et seq.* In an action brought under the statute, a plaintiff's burden of proof may be satisfied either by conventional direct or circumstantial evidence of discrimination or, alternatively, under the method of proof created in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ In this case, Sado presents no direct or circumstantial evidence of discrimination. He has pleaded no facts and cited no comments or actions on the part of any of his supervisors at Leland that even remotely suggest a discriminatory attitude or intent on their part. Indeed he does not even mention the race or national origin of any of his supervisors.[2] Although Sado claims he was unfairly treated compared to other employees, he cannot point to a single instance in which a similarly situated nonminority American-born individual was treated more favorably than he.[3] In short, there is no evidence in the record to substantiate Sado's claim that he was discriminated against based on his race or national origin, however sincerely he may believe that to be true.

■ In the absence of direct or circumstantial evidence, a prima facie case of discrimination may sometimes be formulated under the *McDonnell Douglas* method. Where plaintiff claims his termination was the result of discriminatory disciplinary practices, he must show: (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees. *Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir.1993).

■ Assuming that a plaintiff can establish a prima facie case of discrimination, the burden then shifts to the employer to articulate a legitimate business reason for the plaintiff's termination that rebuts the presumption of discrimination that the plaintiff

---

2. The only person whose race is identified is Jim Cepko, Sado's co-worker and day supervisor of the Respiratory Therapy Department, who is said to be a white American male.

3. There is a suggestion that Jim Cepko, mentioned in the previous footnote, received favored treatment compared to Sado, but there is also some indication that Cepko earned his pro-

motions and benefits through superior performance. On the basis of the facts in the record, there is simply no basis for concluding that Cepko was in a position comparable to Sado's or that any disparate treatment of the two was due to race/national origin discrimination against Sado.

has established. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981).

 Once the employer has advanced a legitimate nondiscriminatory reason for the plaintiff's termination, any "presumption" of discrimination drops out of the case and the plaintiff bears the ultimate burden of persuasion to prove that the employer intentionally discriminated against him. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). *Cook v. CSX Transp. Corp.,* 988 F.2d 507 (4th Cir.1993). The plaintiff must then produce evidence that the employer's proffered reason is simply a pretext for a discriminatory employment decision.

Sado has satisfied only the first of the three elements of proof for a prima facie case under *McDonnell Douglas,* that he was a member of a protected class. He cannot prove the second element, that his misconduct was comparable in seriousness to the misconduct of employees outside the protected class, when he gives no specific examples of misconduct on the part of unprotected others with which to compare his own conduct.

As for the third element, that the disciplinary measures enforced against him were more severe than those enforced against employees outside the protected class, again he provides no evidence of allegedly more lenient treatment of equally serious misconduct. In fact, he cites no facts whatsoever about disciplinary measures enforced against any other employees.

 Having failed to establish two of the three *McDonnell Douglas* elements, Sado makes no prima facie showing of illegal discrimination and the analysis need proceed no further. The ultimate burden of proving discrimination is always with Plaintiff and it is a burden Sado fails to carry. The Court will GRANT Defendant's Motion for Summary Judgment and enter judgment in favor of

**4.** Without in any way intending to suggest that he may have another cause of action, Sado is reminded that "Title VII (does) not protect against unfair business decisions—only against

Leland Memorial Hospital on Sado's Title VII claim.[4]

A separate Order implementing this decision will be entered.

decisions motivated by unlawful animus." *Rudolph v. Hechinger Co.,* 884 F.Supp. 184 (D.Md. 1995) quoting *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1257 (5th Cir.1977).