Angelo L. BODOY, Plaintiff,

v.

NORTH ARUNDEL HOSPITAL,
et al., Defendants.

Civil No. K–94–2404.

United States District Court,
D. Maryland.

Nov. 20, 1996.

Angelo L. Bodoy, Severn, MD, Pro Se.

Bruce Harrison, Gary L. Simpler, Robert H. Ingle, III, and Shawe & Rosenthal, Baltimore, MD, for defendants.

FRANK A. KAUFMAN, Senior District Judge.

Plaintiff Angelo L. Bodoy ("Bodoy") contends that his former employer, North Arundel Hospital ("North Arundel"),[1] and certain of its supervisors, managers, and/or officers, namely Philip Engers, Frank Florentino, T. Wyatt Medicus, David McGunigale, James Walker, and Charles Wilson, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C.

---

1. Bodoy originally named North Arundel Hospital Professional Center, Incorporated as defendant. The current name of Bodoy's employer is apparently North Arundel Hospital. That is the name used by this Court in this opinion and is, this Court understands, the appropriate defendant in the view of all parties and all counsel of record.

§ 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"), by subjecting him to unequal discipline and work conditions, harassment, unequal opportunities for advancement, retaliation for engaging in protected activity, and retaliatory discharge, all on the basis of race and national origin, i.e. Latino (Puerto Rican). Dennis Mitchem, a co-worker of Bodoy, was originally a co-plaintiff, in this case claiming retaliation by one or more of defendants for participating in protected activities on behalf of Bodoy. Bodoy and Mitchem were originally represented by the same counsel who withdrew from this case, with the approval of Judge Black of this Court to whom this case was originally assigned, due to a conflict arising from the joint representation of plaintiffs, Bodoy and Mitchem.

In addition to this case, the federal Equal Employment Opportunity Commission ("E.E.O.C.") originally instituted a separate case in this Court, alleging a single Title VII claim of disparate treatment on behalf of Bodoy against the defendants. The E.E.O.C. case and this case were consolidated by Judge Black, and considered as such, until the E.E.O.C. and the defendants jointly moved for dismissal of the E.E.O.C. case after some discovery was taken. Judge Black approved that joint request for dismissal of the E.E.O.C. case during a hearing in open court held on February 9, 1996. After that dismissal, Mitchem subsequently dismissed with prejudice his allegations in the within case, with the approval of Judge Black.

North Arundel and the individual defendants have filed a Motion for Summary Judgment which Bodoy opposes. Bodoy's original complaint was drafted by his original attorneys; his latter attorneys served interrogatories and document requests on the defendants which were answered by them; and Mr. Bodoy was aided in this suit to some extent by the E.E.O.C. who apparently helped him when he was examined during his deposition. Today, however, Bodoy proceeds without the assistance of counsel. In general, pro se litigants are held to a less stringent standard than trained attorneys, and therefore, this Court reads plaintiff's Opposition to

Summary Judgment liberally and with deference. *See Haines v. Kerner,* 404 U.S. 519, 520–521, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Sado v. Leland Memorial Hospital,* 933 F.Supp. 490, 493 (D.Md.1996). However, having considered that Motion, the Opposition thereto and the entire record in this case, this Court will grant defendants' motion.

### I.

Bodoy, a Puerto Rican Latino male, was employed by North Arundel from May 14, 1990 to August 16, 1994 as a Maintenance Mechanic II ("Mechanic II"). Bodoy, at the time he was hired by North Arundel, stated that he had worked at Mount Sinai Hospital in New York City for twenty-five years in a job with duties similar to those of a Mechanic II. During his deposition taken in the within case, Bodoy admitted that he was hired and worked for four years as a Porter at Mount Sinai, then was a Lab Helper for five or six years, then a Morgue Technician for approximately two years, then for six or seven as an un-licensed Respiratory Therapist Technician, and then only after approximately eighteen years, was he involved in maintenance. Bodoy's maintenance duties at Mount Sinai were apparently never as comprehensive as those for which Bodoy was hired at North Arundel. At Mount Sinai, Bodoy bolted and unbolted equipment and reassembled the same. Bodoy, in his deposition taken in this case, contended that he had watched other mechanics do the type of work for which he was hired at North Arundel, and that therefore, his twenty-five years at Mount Sinai qualified him for the North Arundel position.

As a Mechanic II for North Arundel, Bodoy was responsible for general maintenance and repair of the hospital's physical facilities including: electrical, lighting, medical gas, heating, air conditioning, ventilation, alarms, plumbing, paging and communications systems. While a Mechanic II is not expected to be an expert in a trade, e.g., plumbing and electrical, he or she is expected to be able to make independent judgments with regard to emergency repairs. It is North Arundel's contention that Bodoy was a marginal Mechanic II during his entire tenure at the

hospital. Bodoy was specifically and repeatedly criticized by his supervisors for: (1) the length of time he took to complete "building rounds" during which mechanics were responsible for surveying the hospital for maintenance related problems, (2) failing to respond quickly to pages, (3) failing to understand and to accomplish basic electrical and plumbing repairs, (4) failing apparently to participate in additional technical training in fields such as air conditioning repairs (updating skills training is required by North Arundel of all mechanics), and (5) failing to reduce the number of times upon which he passed on an assignment to another worker.[2] Those criticisms were heavily documented by the hospital's supervisory employees in numerous annual and interim performance reviews in which Bodoy received several "below standards" ratings. In addition, complaints about his performance resulted in a "verbal counseling," a "written counseling," and two "written warnings," actions by supervisory employees, supervising him in accordance with the hospital's personnel policy. While the criticisms of Bodoy's work-related performance continued up to his termination, such criticism was not in fact the reason for his termination. Rather, Bodoy was terminated for surreptitiously recording conversations between himself and his supervisors in violation of Maryland's Wiretap and Electronic Surveillance Statute, as set forth in MD. COURTS & JUD.PRO.CODE ANN. § 10–401 to § 10–414 (1994).

Bodoy claims that he was subjected to unequal work conditions and unequal discipline at North Arundel due to his race and nationality, and because he filed numerous grievances and several complaints with the E.E.O.C. Further, Bodoy states that he was

given permission to tape record conversations by North Arundel's Vice President T. Wyatt Medicus, however, that alleged approval was given after Bodoy had already begun to tape conversations with other supervisors without their consent.

## II.

Summary judgment is appropriate where "there is no genuine issue of material fact and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Pro. 56(c). While the non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor," *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir.1987), the non-movant, in resisting summary judgment, must "go beyond the pleadings and by [its] own affidavits.... depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate, therefore, where there is no genuine issue of material fact that could lead a rational tier of fact to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Even in discrimination cases where motive and intent are critical to the analysis, "summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (citation omitted).

Plaintiff's Complaint alleges two separate causes of action: (1) disparate treatment un-

---

**2.** See Defs.' Ex. 15 (Bodoy's 1991 performance review); Defs.' Ex. 23 (September 9, 1991 notation of below standard performance in three areas, including inability to complete routine tasks within a reasonable time); Defs.' Ex. 25 (September 18, 1991 notation of "verbal counseling" admonishing Bodoy for passing off a work order to another employee); Defs.' Ex. 27 (November 11, 1991 Interim Review noting Bodoy's inability to perform to levels expected of Mechanics, particularly in the area of electrical and plumbing repairs); Defs.' Ex. 31 (March 17, 1992 written counseling for failure to report or contact supervisor regarding subcontractor's service request);

Defs.' Ex. 35 (Bodoy's 1992 performance review); Defs.' Ex. 38 (January 6, 1993 written warning for failing to perform assigned duties); Defs.' Ex. 43 (March 10, 1993 written warning for failure to follow department policies and to notify a supervisor of problems with an assigned duty); Defs.' Ex. 47 (Bodoy's 1993 performance review); Defs.' Ex. 49 (September 28, 1993 performance improvement plan); Defs.' Ex. 50 (January, 1994 Interim Review noting Bodoy's continued inability to complete hospital rounds in the allotted time); Defs.' Ex. 51 (Bodoy's 1994 performance review).

der Title VII and Section 1981; and (2) retaliation for engaging in protected activity in violation of Title VII in the form of negative job appraisals and retaliatory discharge. The standards for establishing plaintiff's said claims under Title VII and Section 1981 are the same. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Therefore, the entirety of plaintiff's claims are examined in this opinion with regard to Title VII's standards.

### III.

■ A successful disparate treatment claim, under Title VII, requires a plaintiff to establish that she or he has been subjected to some negative employment action, or to unequal terms and conditions of employment, on the basis of race or national origin, when compared with the treatment of other employees of a different race or national origin. "It shall be an unlawful employment practice for an employer ... to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a). Bodoy contends that he was subject to unequal work conditions and a series of negative employment actions on the basis of race or national origin, including: a verbal counseling on September 18, 1991, a written counseling on March 17, 1992, a written warning on January 6, 1993, and a written warning on March 10, 1993.[3] Clearly those reprimands had a meaningful adverse effect on the status of Bodoy's employment, and prevented Bodoy from earning any of the merit salary increases, which are given out in July after the spring annual performance reviews, after his first year of employment at North Arundel.[4]

■ The success of Bodoy's disparate treatment claim, however, depends on his ability to link his treatment in the workplace, and the series of negative employment actions which he documents, to a discriminatory animus on the part of·the defendants. In that regard, a plaintiff's burden of proof may be satisfied either by way of direct evidence, or under the judicially recognized method of proof created in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In this case Bodoy's attempts to proffer either direct or circumstantial evidence of discriminatory intent fail.

■ The only evidence which Bodoy offers of discriminatory intent is an exchange which he had with a co-worker, Don Hill, during which Hill allegedly referred to him as a "Puerto Rican spic" and "scum." Bodoy states that his supervisor, Frank Florentino, overheard those comments and failed appropriately to rebuke his co-worker. That contention, however, is denied by Florentino under oath. However, even if Hill made and Florentino overheard the remarks, these remarks standing alone are not enough to establish discriminatory intent. "Stray remarks" and isolated statements by those unconnected to the final decision-making process and to the negative employment actions are not sufficient to establish discriminatory animus. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 1804–05, 104 L.Ed.2d 268 (1989); *Blahut v. W.W. Grainger Inc.,* 1993 WL 454359, *5 (D.Md.1993). Noting Hill's statement in the light most favorable to Bodoy, this Court can not conclude that said non-action entitles Bodoy successfully to resist summary judgment with respect to the question of whether "but for" Bodoy's race and national heritage, North Arundel would not have taken negative employment actions against Bodoy. That is particularly true in light of Bodoy's negative employment record.

■ In the absence of sufficient direct evidence of discriminatory intent, Bodoy must establish a prima facie case using the three step approach of *McDonnell Douglas* in order sufficiently to assert an inference of racial or national origin discrimination and avoid summary judgment against him. ·Bo-

---

3. *Supra* note 2.

4. See Defs.' Ex. 36 ("Merit increases may be granted to employees whose performance overall meets or exceeds all the criteria standards for the job.... A merit increase will, also, not be granted to any employee who is at or exceeds the First Written Warning level, for any reason, at the time of the merit increase determination.").

doy must proffer some substantive evidence showing that similarly situated non-Latino employees were treated differently than he was treated, or specifically, with respect to his unequal discipline complaint: "(1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees." *Cook v. CSX Transportation Corp.*, 988 F.2d 507, 511 (4th Cir.1993). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Bodoy is certainly within a class protected by Title VII, he is Latino and was in fact the only Latino in his division. Further, Bodoy, at least arguably, has proffered sufficient evidence to show that he engaged in prohibited conduct which was comparable to that of other non-Latino employees. Bodoy, however, has considerably more difficulty establishing that the disciplinary measures taken against him and the conditions under which he worked were dissimilar from those enforced against his co-employees. Bodoy relies on an E.E.O.C. Determination issued on September 30, 1993 which concluded that certain witness testimony supports Bodoy's claims that he had been denied training, harassed, subjected to unequal terms and conditions of employment, disciplined unequally, and denied merit increases on the basis of race. The admission of E.E.O.C. findings are within the discretion of the Court. In this instance, in the summary judgment context of this case, this Court will fully consider the E.E.O.C.'s said

September 30, 1993 Determination. *See Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir.1988). However, standing alone, the E.E.O.C.'s findings are not sufficiently probative to create a genuine issue of fact. The E.E.O.C.'s original determination relied on two affidavits which indicate that Bodoy was subjected to unequal work conditions. Seemingly, on that basis, the E.E.O.C. made the initial determination that Bodoy was discriminated against on the basis of race or national origin. In that light, this Court, will look beyond the E.E.O.C.'s said determination to the underlying witness testimony on which the E.E.O.C. relied.

The witness testimony given in favor of Bodoy's claim consists of affidavits taken by the E.E.O.C. from Frederick Mitchem and Wayne Fink, a Mechanic III employed by North Arundel. Those witnesses have stated: (1) Bodoy was assigned to the hospital rounds and routine maintenance more often than others on the maintenance staff; (2) Bodoy was denied the opportunity to work with Mechanic IIIs in comparison to other Mechanic IIs (a practice Bodoy claims inhibited his ability to improve his skills); (3) employees often passed work orders among each other (and were not disciplined in the same manner as Bodoy); and (4) Bodoy was a competent Mechanic II, but, his work was scrutinized more heavily than that of other similarly situated employees. Further Mitchem attested that Bodoy was "set up" with regard to circumstances surrounding the incident that led to Bodoy's first written counseling dated March 17, 1992.[5] When taken in the light most favorable to plaintiff, such testimony is perhaps sufficient to establish Bodoy's prima facie case of disparate treatment.[6]

---

5. Mitchem Aff. at 2.

6. This Court recognizes, however, that the hospital has offered substantial evidence in its effort to discredit Bodoy's prima facie case. In particular, North Arundel has offered affidavits from numerous supervisors and co-employees stating that Bodoy was disciplined in the same fashion as non-Latino employees. Those affidavits include testimony from Fink. In an subsequent affidavit which Fink authored, signed and gave to the hospital after his earlier, above-referenced testimony, Fink reaffirmed his belief that Bodoy's work was more heavily scrutinized by hospital

management but asserted that he did not believe such scrutiny was the result of racial or national origin bias. Further, Fink attested that his earlier statement was colored by problems which he was experiencing with hospital management at the time. In that regard, Fink, in his later affidavit, indicated that his earlier statement was incomplete and failed to convey his impressions that Bodoy was indeed a slow worker suited for the simple tasks required of mechanics as they perform hospital rounds—as opposed to the work called for by Mechanic IIs. In that regard, Bodoy himself recognized, in his deposition testi-

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to establish some legitimate non-discriminatory reason for the plaintiff's discipline. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 (citation omitted). North Arundel has well met its burden in that regard. North Arundel has proffered sufficient uncontroverted evidence to establish a legitimate reason for each instance of disciplinary action taken against Bodoy.[7] Bodoy was disciplined each time because he failed to follow the policies of his department or failed to complete assignments. Additionally, North Arundel has established that Bodoy was not the only employee similarly disciplined. For instance, six other non-Latino employees working in Bodoy's department were denied merit increases in 1992 for performance or conduct related reasons.[8]

Furthermore, North Arundel has submitted numerous affidavits from Bodoy's supervisors and co-employees detailing his comparative lack of skill and efficiency in his job. Along the same lines, Bodoy's frequent performance evaluations establish significant deficiencies in his work. North Arundel, therefore, contends that to the extent that Bodoy's claim of unequal work conditions is considered, it should be noted that Bodoy was assigned to maintenance rounds because this was the work for which he was best suited. Thus, North Arundel states that Bodoy was not assigned to work alongside Mechanic IIIs for the simple reason that such assignment was not a cost-effective use of employee time

because of Bodoy's documented insufficiencies.

As North Arundel has met its burden in the present summary judgment posture of this litigation, of showing non-discriminatory reasons for its employment actions vis-a-vis Bodoy, Bodoy is left with the ultimate burden of persuading this court that he has been the victim of intentional discrimination. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94; *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–511, 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993). That Bodoy has not done. In order to rebut the defendant's legitimate non-discriminatory reasons for its actions, Bodoy must at least indicate "that a discriminatory reason more likely motivated that employer or … show[ ] that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095 (citation omitted). As explained earlier, Bodoy has no direct evidence that North Arundel's actions were motivated by racial bias. "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 456 (4th Cir.1989) (citation omitted). Indeed, even Mitchem has stated, "I am not positive that his race … had anything to do with the actions taken against Bodoy."[9] Bodoy is also unable to establish any fault or any deception with regard to North Arundel's proffered explanation for its management decisions. Accordingly, plaintiff's disparate treatment claim fails to survive defendant's quest for summary judgment.

In sum, Bodoy bases his allegations of discrimination against him upon his being

---

mony in this case, that other Mechanic IIs, who were his co-workers at North Arundel, had special skills such as refrigeration, welding and fabrication, and that one of his co-workers was a licensed electrician. (Bodoy Dep. at 826–33.) Bodoy has not pointed to any special skills of his own. Yet, Bodoy repeatedly places an emphasis on not being treated equally with any other Mechanic IIs and not being permitted to work on a rather equal basis with Mechanic IIIs so as to improve himself. (Bodoy Dep. at 273–74, 993.) This record suggests that North Arundel did not

discriminate against plaintiff because it appointed Bodoy as a general maintenance person, but rather made a business decision based on his relative lack of special skills.

7. See Defs.' Mem.Supp.Summ.J. at 20–34, and supporting documents.

8. See Defs.Ex. 37.

9. Mitchem Aff. at 4.

Latino, and upon inferences he draws from just about every critical word directed against him by any supervisory employee or official of the hospital. Seemingly, that approach persuaded the E.E.O.C. at certain times to believe that because Bodoy was Puerto Rican, he was denied training, over-supervised, over-disciplined, and denied a pay raise. In the end, however, after a considerably more full investigation, the E.E.O.C. changed its mind and dismissed its allegations against the hospital. With the full record in this case before it, including Bodoy's deposition testimony, this Court has little or no question in its mind, that Bodoy's disparate treatment claim on the basis of race and/or nationality is entirely conclusory and that the E.E.O.C. prudently dismissed its suit with regard to the claims which this Court has just examined.

### IV.

 Title VII also prohibits employers from retaliating against employees for engaging in protected activity such as the filing of a discrimination complaint. *See* 42 U.S.C. § 2000e–3. In order to sustain a retaliation claim, Bodoy must establish that "the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). It is undisputed that Bodoy engaged in protected activity by filing a number of discrimination complaints with the E.E.O.C., and that numerous adverse actions were taken by North Arundel against Bodoy after Bodoy's first discrimination complaint was filed with the E.E.O.C. on November 11, 1991, including his termination in 1994.[10]

For the purposes of this opinion, this Court will examine Bodoy's allegation of retaliatory discharge separately from the other negative actions which the hospital took against Bodoy. With respect to the negative employment actions, excluding the discharge, on which Bodoy bases his claim, North Arundel argues that Bodoy has not come forward with sufficient evidence to show a causal connection between the protected activity and North Arundel's negative employment actions. That appears to be the case. Once again, Bodoy's factual contentions are most circular.

 Assuming, however, that a prima facie case has been established by Bodoy as to such casual connection, Bodoy faces the task of sufficiently rebutting North Arundel's non-discriminatory and non-retaliatory reasons for disciplining Bodoy. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093–94 (1981). In order for an employee to "disprove a legitimate non-discriminatory explanation for adverse action … he must show that the adverse action would not have occurred 'but for' the protected conduct." *Ross*, 759 F.2d at 365–366. Otherwise, employees could insulate themselves from disciplinary action simply by filing a discrimination charge with the E.E.O.C. *See Ross*, 759 F.2d at 366. "Title VII serves the laudable goal of protecting employee access to agencies and courts. It does not shield employees from normal sanctions for misconduct." *Ross*, 759 F.2d at 366. On the record here, plaintiff fails to carry the burden of persuasion in his retaliation claim because he has not met his burden of proffering substantially that "but for" his filing a discrimination complaint he would not have been disciplined. That is made clear by the record of Bodoy's failures to meet the job standards which, even if they were not fully reasonable as they appear to have been, were well within the employer's right to set and to impose, and establish a clear non-discriminatory basis for the defendant's employment actions. Further, one cannot read the record in this case without appreciating that the plaintiff was a difficult employee who resisted the attempts of his supervisors to show him how to improve himself, who was determined to go his own

---

**10.** *Supra* note 2. In 1991, Bodoy also asserts that he was given "dangerous" work assignments in retaliation for his legitimate complaints about on-the-job conditions. Bodoy did not assert these contentions to the E.E.O.C. and the at-

tempts Bodoy made during his deposition, and/or at other times during this litigation, to point out dangerous assignments are unconvincing to this Court.

way to the fullest extent he could do so, and who was a troublemaker. Nevertheless, Bodoy was not fired for failure to perform his job, and indeed his immediate supervisor when Bodoy was terminated in August, 1994, believed Bodoy's overall employment performance was not so unsatisfactory as to cause the termination of his employment and that the same should have been continued if not for the taping matter.[11]

 While North Arundel seemingly could have discharged Bodoy, when it did, for Bodoy's job performance deficiencies, it did not so do. Rather, the record reveals, that North Arundel discharged Bodoy because he surreptitiously tape recorded conversations with his supervisors, lied about doing so when confronted by his supervisors about the same, and refused to turn over the tapes.[12] Under Maryland law, it is unlawful to tape record a conversation without the permission of all the parties. "One of the clear purposes of the Maryland Act is to prevent, in non-criminal situations, the unauthorized interception of conversations where one of the parties has a reasonable expectation of privacy." *Benford v. American Broadcasting Companies, Inc., et al.*, 554 F.Supp. 145, 151 (D.Md.1982). Bodoy's conduct was corroborated by both the E.E.O.C. and Bodoy's former brother-in-law, Luis Jerez. Indeed, ultimately, Bodoy admitted that he taped at least some conversations without the permission of the other participants. Applying *Ross* to those circumstances, it is clear that Bodoy can neither establish a causal connection between his protected activity and his discharge, nor can he rebut North Arundel's legitimate, non-discriminatory reason for his discharge—his engagement in illegal taping. Consequently, plaintiff's retaliatory discharge claim cannot survive defendant's motion for summary judgment. Accordingly, judgment will be entered for defendants in a separate Order of even date herewith.

**11.** Defs.' Ex. 51.