Margie THOMAS, Plaintiff,

v.

WESTINGHOUSE SAVANNAH RIVER COMPANY, Defendant.

No. CIV.A. 1–95–3240–6BD.

United States District Court, D. South Carolina, Aiken Division.

Aug. 25, 1997.

---

William Gary White, III, Columbia, SC, for Margie J. Thomas, plaintiff.

Margie J. Thomas, Springfield, SC, pro se.

Gardner G. Courson, Glass McCullough Sherill and Harrold LLP, Atlanta, GA, Laura H. Walter, McGuire Woods Battle and Boothe, LLP, Atlanta, GA, Joy Scherffius Goodwin, Young and Goodwin, PA, Columbia, SC, for Westinghouse, Westinghouse Savannah River Company Inc., defendant.

### ORDER

SIMONS, Senior District Judge.

This action, alleging race discrimination and retaliation in violation of Title VII of the 1964 Civil Rights Act as well as pendent state law causes of action, comes before the court with the Report and Recommendation

of the United States Magistrate Judge. Based upon his detailed review of the record, the Magistrate Judge recommended that defendant's Motion for Summary Judgment be granted with respect to plaintiff's Title VII and Section 1981 race discrimination and retaliation claims. He further recommended that plaintiff's remaining state law causes of action be dismissed, without prejudice.

Plaintiff has submitted Objections to the Magistrate Judge's Report and Recommendation. The court has reviewed plaintiff's Objections *de novo,* but it concludes that they are without merit. On consideration of the matter, the court hereby adopts the Magistrate Judge's Report and Recommendation, which is made a part of this Order by specific reference. For the reasons set out therein, defendant's Motion for Summary Judgment is hereby granted with respect to plaintiff's Title VII and Section 1981 race discrimination and retaliation claims. Plaintiff's remaining state law causes of action are hereby dismissed without prejudice, so that she may pursue such state law claims in state court.

*AND IT IS SO ORDERED.*

## REPORT AND RECOMMENDATION

MARCHANT, United States Magistrate Judge.

This action has been filed by the Plaintiff alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* as amended, and 42 U.S.C. § 1981. Plaintiff also asserts several pendent state law causes of action.

The Defendant has filed a motion for summary judgment as to all claims with a supporting brief and exhibits. Plaintiff has filed a brief in opposition, to which the Defendant filed a reply memorandum. As both sides have extensively briefed the issues in this case, in particular with regard to the federal causes of action, and have submitted numerous exhibits and transcripts both in support of and opposition to the motion for summary judgment, a separate motions hearing was not required. *See* Local Rule 7.08. Defendant's motion is now before the Court for disposition.[1]

### Background

Plaintiff, an African–American female, is employed by the Defendant Westinghouse Savannah River Co. ("WSRC" or "Defendant"). At the time relevant to the allegations set forth herein, the Defendant managed and operated the Savannah River Site for the United States Department of Energy. Part of the Defendant's management responsibility was to ensure safe maintenance of the tritium stockpile as well as waste management and other cleanup and restoration efforts. *Davis Affidavit,* ¶ 3.

Plaintiff was employed as a 2F Control Room Operator. *Plaintiff's Deposition,* p. 49. A Control Room Operator is responsible for monitoring the equipment used to condense contaminated waste materials and the equipment used to transfer contaminated waste material. The Control Room Operator must monitor the equipment in their area (in this case the 2F Control Room), primarily the "evaporator",[2] to assure that it is maintained within safe operating or shutdown limits at all times. *Davis Affidavit,* ¶¶ 4–5. Because of these important responsibilities, the position of Control Room Operator is considered an important and sensitive position. *Davis Affidavit,* ¶ 6.

It is undisputed that the Plaintiff was on shift as the 2F Control Room Operator from 7:00 p.m. on August 21, 1994 to 7:00 a.m. on

---

1. This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

2. The evaporator is essentially used to "boil off" water contained in contaminated waste in order to concentrate the waste. This concentrated waste is then drawn off for storage or further processing. During this "evaporation" or "boiling off" process, contaminated waste is continually introduced into the evaporator while the concentrated waste is removed. Because evaporators always contain some level of waste material, they are continuously monitored. *Davis Affidavit,* ¶ 5.

August 22, 1994. *Plaintiff's Deposition,* p. 49. It is also undisputed that during her shift, Plaintiff recorded five (5) incorrect data readings on the evaporator log sheet at different times throughout the night. *Id.* at p. 77; *Exhibits 1–3; Davis Affidavit,* ¶ 8. When confronted by management concerning these errors, Plaintiff could not explain her recordings, only acknowledging that she made a "mistake" and that she may have "just lost it." *Plaintiff's Deposition,* pp. 58, 77–78, 84; *Mobley Deposition,* pp. 36–37.[3] Plaintiff also does not contest that she deserved some form of discipline for her actions. *Plaintiff's Deposition,* p. 173.

An investigation of this incident was conducted by Garry Davis, the Facility Manager. Davis concluded that Plaintiff had revealed a lack of understanding of the evaporator system, or had in fact falsified the documentation and her readings. *Davis Affidavit,* ¶ 10. Davis considered Plaintiff's neglect of her Control Room Operator duties to be a serious matter, and that discipline was warranted. He consulted with the Human Resources Staff concerning what disciplinary action would be appropriate. *Davis Affidavit,* ¶ 12; *Carpenter Affidavit,* ¶ 5. As a disciplinary action, it was determined that Plaintiff would be placed on Final Employee Commitment (FEC)[4] and given eighty (80) hours off without pay as well as a reassignment from operator duties in order to allow for requalification. However, Plaintiff was not demoted, and has in fact since this incident been increased, along with her co-workers, from level 18 pay status to level 20 pay status. *Davis Affidavit,* ¶¶ 12–13. Further, as a result of Plaintiff's complaints about the discipline, the disciplinary action imposed was itself subsequently changed to probation and forty (40) hours off without pay. *Davis Affidavit,* ¶ 13.

Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC) and the Equal Employment Opportunity Commission (EEOC) alleging race discrimination and retaliation as a result of her discipline. *Plaintiff's Deposition, Exhibit 9.* Both SCHAC and the EEOC issued "no cause" determinations. Plaintiff then filed this lawsuit in United States District Court.

## Discussion

As noted, the Defendant has moved for summary judgment. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party has the burden of proving that judgment on the pleadings is appropriate. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.; *Celotex v. Catrett, supra.* The opposing party may not rest on the mere assertions contained in the pleadings.

A) **Race Discrimination Claim.**[5] Plaintiff's claim of race discrimination is for dispa-

---

3. Plaintiff continues to offer no explanation for her actions. Plaintiff's brief in opposition to the Defendant's motion for summary judgment contains the notation "Plaintiff is not sure how she incorrectly noted the readings....a reasonable inference is that the Plaintiff was fatigued and out of it, she was not functioning as she should." *Plaintiff's Memorandum in Opposition,* at p. 2.

4. Final Employee Commitment, or FEC, is a work status assigned as a disciplinary measure which puts employees on notice that additional misconduct will result in termination. *See De-*

*fendant's Memorandum in Support of Summary Judgment,* p. 9. Although the Defendant does not direct the Court to where this definition is set forth in the evidence, Plaintiff apparently does not contest it. *See generally Plaintiff's Memorandum in Opposition to Summary Judgment.*

5. Plaintiff apparently asserts her race discrimination and retaliation claims under both Title VII and § 1981, although the parties' briefs discuss Plaintiff's claims exclusively under Title VII. However, the standards applicable to suits under Title VII of the Civil Rights Act of 1964 are also

rate treatment (i.e. intentional discrimination), based on her allegation that she was discriminated against because of her race. Disparate treatment cases under Title VII require proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The United States Supreme Court articulated a three-part analysis for analyzing Title VII cases in *McDonnell Douglas. First*, the Plaintiff must establish a prima facie case of discrimination.[6] Once a prima facie case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff. *Second*, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. *Third*, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on the Plaintiff's race. *McDonnell Douglas Corp.*, 411 U.S. at 802–805, 93 S.Ct. 1817; *Texas Dep't of Community Affairs*, 450 U.S. at 252–256, 101 S.Ct. 1089; *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234–235 (4th Cir.1991). Despite these shifting burdens of production, the Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. *Texas Dep't of Community Affairs*, 450 U.S. at 252–253, 101 S.Ct. 1089; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

As noted, in order to satisfy the first prong of the *McDonnell Douglas* three-part analysis, the Plaintiff must first establish a prima facie case for discrimination. In order to establish a prima facie case for her claim, the Plaintiff must establish the following: 1) that she is a member of a protected class; 2) that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and 3) that the disciplinary measures enforced against her were more severe than those enforced against those other employees. *Cook v. CSX Transportation Corp.*, 988 F.2d 507, 511 (4th Cir.1993). It is undisputed that Plaintiff is a member of a protected class (African–American), and that she was disciplined. However, Defendant denies that the conduct in which Plaintiff engaged was comparable to conduct engaged in by employees outside of the protected class, or that the disciplinary measures enforced against her were more severe than those enforced against those other employees.

In an effort to show a genuine issue of material fact that she was subjected to more severe discipline than similarly situated non-minority employees, Plaintiff first points to the actions taken by her supervisor, Larry Moore [white male], and to the lack of any disciplinary action taken against him as a result of this incident. Specifically, while acknowledging that she made incorrect readings and entered incorrect data, Plaintiff ar-

applicable to suits brought under § 1981, and therefore apply to Plaintiff's § 1981 claim as well as her Title VII claim. *Gairola v. Com. of Virginia Dep't of General Servs.*, 753 F.2d 1281, 1285 (4th Cir.1985); *Abasiekong v. Shelby*, 744 F.2d 1055, 1058 (4th Cir.1984).

**6.** Plaintiff can avoid having to establish a prima facie case if she has direct evidence of discrimination. Direct evidence is "[e]vidence, which if believed, proves existence of fact in issue without inference or presumption." *Black's Law Dictionary*, 460 (6th Ed.1990) (citing *State v. McClure*, 504 S.W.2d 664, 668 (Mo.Ct.App.1974)). In other words, direct evidence is evidence that, by itself, proves the discrimination. An example of direct evidence would be a piece of paper saying, "discipline Thomas, she is black." *See Williams v. General Motors Corp.*, 656 F.2d 120, 130 (5th Cir.1981), *cert. denied* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). Circumstantial evidence, on the other hand, is evidence from which discrimination may be inferred.

Plaintiff has no direct evidence of discrimination. However, the absence of direct evidence of discrimination is not fatal to Plaintiff's claim. Direct proof of discrimination rarely exists in this type of case. In such a situation, indirect evidence of discrimination may be presented through the *McDonnell Douglas* framework discussed herein.

gues in her brief that Moore was also at fault because he "failed to exercise his supervisory responsibility to take care of the matter." Plaintiff further characterizes Moore's actions in her brief as an "apparent deliberate failure to intervene," and notes that she had previously complained to an "employee concerns" hotline on August 3, 1994 about Moore's unfair treatment of black employees as a reason for Moore having failed to "step[ ] in as he should."

However, Plaintiff has failed to submit any evidence to the Court to support this argument. To the contrary, Plaintiff herself testified that Moore had nothing to do with her incorrect entries, and was not even present when she made them. *Plaintiff's Deposition*, pp. 85–86. Plaintiff also testified at her deposition that Moore told her he "didn't know anything about" her incorrect readings, and further testified that Moore was never aware of what discipline she received. *Plaintiff's Deposition*, pp. 74–75; *Plaintiff's Affidavit dated December 8, 1995*, ¶ 41. While Plaintiff has offered deposition testimony from two (2) co-workers, Grady Mobley and Kenneth Owens, to support her claim that Moore should have been disciplined because of her actions; *see Mobley Deposition*, pp. 50–51; *Owens Deposition*, pp. 79–80; neither of these two (2) individuals offers anything other than mere speculation or surmise as to why Moore should also have been subject to discipline as a result of Plaintiff's actions. Mobley testified on this point as follows:

> *Question:* You were not present when Larry Moore discovered the incorrect information by Ms. Thomas, were you?
>
> *Answer:* I don't think Larry Moore discovered it, like I say, I think it was the oncoming shift that discovered it.
>
> *Question:* But you were not present when Larry Moore was made aware of her incorrect entries?
>
> *Answer:* Can't say that I was, because I don't know at what point he was made aware.
>
> *Question:* So you don't have any idea what he did or said when he first discovered that, do you?

> *Answer:* No.

*Mobley Deposition*, p. 54.

Owens offered similar testimony at his deposition:

> *Question:* You weren't present when Larry Moore discovered she had put down incorrect information, were you?
>
> *Answer:* No, I wasn't there.
>
> *Question:* So you don't have any idea what steps he took prior to alerting other people that mistakes had been made?
>
> *Answer:* No.

*Owens Deposition*, p. 82.

Further, while Plaintiff attests in an affidavit that Moore should have been required under company policy to take full responsibility for her entries; *Plaintiff's Affidavit dated December 8, 1995*, ¶ 33; she has failed to submit any evidence to show that any "policy" required Moore to be disciplined. *See Hughes v. Bedsole*, 48 F.3d 1376, 1384–1385 (4th Cir. 1995), *cert. denied*, 516 U.S. 870, 116 S.Ct. 190, 133 L.Ed.2d 126 (1995).

In sum, Plaintiff has failed to show why Moore would or should have been subject to discipline for her actions. It is undisputed that it was the Plaintiff who made the incorrect readings and entered the incorrect information, not Moore. Plaintiff has provided no evidence to the Court to show that Moore knew about her incorrect entries, or to support her conclusory allegations that Moore deliberately failed to intervene in this situation so as to have her disciplined.

■ To further refute Plaintiff's claim of a *prima facie* case, the Defendant has offered evidence to show that it gave comparable discipline to both white and black employees when discipline was required. *See generally, Carpenter Affidavit.* Significantly, Plaintiff does not dispute this evidence of comparable disciplinary action being meted out to both white and African–American employees of the Defendant. *Plaintiff's Memorandum in Opposition*, pp. 3, 8. Rather, Plaintiff argues that only the treatment received by employees supervised by Moore should be compared, stating in her brief that "[w]hether or not blacks and whites were treated equally in other areas of the Plant does not satisfy

the question as to why whites were given preferential treatment under Mr. Moore's shift. . . .while the Defendant gives parallels of disciplinary action taken against white employees in other sections, this analysis overlooks that Plaintiff is alleging that the discrimination experience stemmed from treatment afforded black Americans in her area under her shift supervisor." *Plaintiff's Memorandum in Opposition,* pp. 3–4. However, this argument is without merit because it is clear in the evidence submitted to the Court that Garry Davis (the Farm Facility Manager) and Bill Morrison (the Manager of Operations) were the ones who disciplined the Plaintiff, not Moore. Plaintiff herself testified at her deposition that it was Davis and Morrison who handled the investigation into her actions and the discipline imposed. *Plaintiff's Deposition,* pp. 106–107, 119. In fact, Plaintiff admits that Moore did not even know what discipline she ultimately received. *Plaintiff's Affidavit date December 8, 1995,* ¶ 41. Therefore, as Moore was not the individual who disciplined the Plaintiff, there is no basis on which to limit the comparison of other disciplinary action taken by the Defendant just to employees under Moore's shift, and her concession that other employees in general received similar discipline is therefore fatal to her claim.

As the evidence presented fails to show that the disciplinary measures enforced against the Plaintiff were more severe than those enforced against non-minority employees for comparable conduct, Plaintiff has failed to present a prima facie case. *Cook,* 988 F.2d at 511. However, even if the Court credited Plaintiff's evidence and argument that she received more severe disciplinary treatment than two other employees (Wendy Britt and Willie Sitler) under Moore's shift, and found that a prima facie case had been presented, the question before this Court would then be whether the evidence shows a genuine issue of fact as to whether Plaintiff's race was the reason for the disciplinary action taken against her (i.e. "pretext"). The evidence does not show pretext. Plaintiff herself admits that the Defendant was justified in taking disciplinary action against her, and the evidence as a whole shows (and Plaintiff even concedes) that whites and Afri-

can–Americans in general received comparable disciplinary treatment from the Defendant. In order to maintain her claim under Title VII, the Plaintiff must present credible evidence that the decision to discipline her, and the disciplinary action taken, was based on her race, not because Davis was simply incorrect or too harsh in his disciplinary actions, or because of other factors. *Jamil v. Secretary Dep't of Defense,* 910 F.2d 1203, 1207–1208 (4th Cir.1990); *Holder v. Raleigh,* 867 F.2d 823, 828 (4th Cir.1989); *Crowley v. Prince George's County,* 890 F.2d 683, 687 (4th Cir.1989), *cert. denied,* 506 U.S. 833, 113 S.Ct. 101, 121 L.Ed.2d 61 (1992); *McCollum v. Bolger,* 794 F.2d 602, 610 (11th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); *see generally Moore v. Sears, Roebuck & Co.,* 683 F.2d 1321, 1323, n. 4 (11th Cir.1982); *Jones v. Orleans Parish School Board,* 679 F.2d 32, 38 (5th Cir.1982), *cert. denied,* 461 U.S. 951, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983); *North Carolina Dep't of Correction v. Gibson,* 308 N.C. 131, 301 S.E.2d 78, 85 (N.C.1983); *St. Mary's Honor Ctr. v. Hicks, supra; McCollum v. Bolger,* 794 F.2d 602, 610 (11th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); *Holder v. Raleigh,* 867 F.2d 823, 828 (4th Cir.1989). Plaintiff bears the burden of producing such evidence. *Texas Dep't of Community Affairs v. Burdine, supra; St. Mary's Honor Ctr. v. Hicks, supra.* She has failed to do so. Therefore, it is recommended that Defendant's motion for summary judgment as to Plaintiff's Title VII and § 1981 race discrimination claim be granted.

**B) Retaliation Claim.** With regard to Plaintiff's retaliation claim, § 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), provides as follows:

It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof

or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII and § 1981 are subject to the same requirements of proof as are applicable to disparate treatment claims. *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985); *see also Williams v. Cerberonics, Inc.*, 871 F.2d at 457; *Gairola*, 753 F.2d at 1285; *Abasiekong*, 744 F.2d at 1058; *Bodoy v. North Arundel Hosp.*, 945 F.Supp. 890, 894 (D.Md.1996), *aff'd*, 112 F.3d 508, 1997 WL 211228 (4th Cir.1997). "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." *Id.* Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must demonstrate that the Defendant's proffered reason is pretextural. *Id.*

■ A review of the evidence submitted shows that the Plaintiff has failed to establish a claim of retaliation under Title VII. Specifically, Plaintiff's retaliation claim arises out of her having made an anonymous telephone complaint to the Defendant's "employee concerns" hotline on August 3, 1994. *Complaint*, ¶ 8. In this telephone complaint, Plaintiff alleged that her supervisor, Larry Moore, discriminated against African–American employees. Two other African–American employees, Kenneth Owens and Grady Mobley, made similar complaints at approximately the same time. *Plaintiff's Deposition*, pp. 28–29; *Owens Deposition*, pp. 52–53; *Mobley Deposition*, p. 27.

For purposes of summary judgment, the Defendant does not dispute that Moore knew about these complaints, and, even though anonymous, in all likelihood knew who the complaining parties were. However, while Plaintiff engaged in protected activity (complaining about her work environment, and in particular her supervisor, Larry Moore) and had an adverse employment action taken against her (she was disciplined), she has failed to show any causal connection between her having engaged in protected activity and the disciplinary action taken. It is clear in the evidence that Moore was not the individual who took disciplinary action against the Plaintiff; rather, it was Manager of Operations Bill Morrison and Facility Manager Garry Davis. *Plaintiff's Deposition*, pp. 106–107, 119; *see also Davis Affidavit.* Plaintiff has offered no direct evidence that Morrison and Davis were even aware of the complaint she had made against Moore. *Plaintiff's Deposition*, pp. 130–132. Further, Plaintiff has failed to submit any evidence to show that either Morrison or Davis, even if they knew about her complaint concerning Moore, made their decision on Plaintiff's discipline out of any retaliatory animus.[7]

Plaintiff no doubt sincerely believes that the disciplinary action taken against her was retaliation for her having complained about Moore. However, Plaintiff's conclusory belief does not constitute evidence sufficient to defeat a properly supported summary judgment motion. The mere fact that Plaintiff had made such complaints or engaged in protected conduct does not immunize her from otherwise proper disciplinary action based on misconduct. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 366 (4th Cir.1985) ["Title VII serves the laudable goal of protecting employee access to agencies and courts. It does not shield employees from normal sanctions for misconduct."]; *Bodoy*, 945 F.Supp. at 898. Here, there is no dispute that the Plaintiff engaged in the improper conduct alleged, and even Plaintiff herself admits that some disciplinary action

---

7. It is significant to note that although two other African Americans also complained about Moore at the same time as the Plaintiff, neither testified

that they had suffered any retaliation or adverse employment action as a result. *Mobley Deposition*, p. 29; *Owens Deposition*, p. 54.

was warranted. Plaintiff has presented no evidence to show any racial animus on the part of either Morrison or Davis, or to show a causal connection between their disciplinary decision and her having previously complained about her supervisor. Plaintiff cannot defeat a properly supported motion for summary judgment with unsupported speculation or allegations of discrimination; *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985); *Felty v. Graves–Humphreys, Co.,* 818 F.2d 1126, 1128 (4th Cir.1987); nor may a party opposing summary judgment "create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). Plaintiff's own self-interested statements as to what he believed or perceived are not sufficient evidence. *McNairn v. Sullivan,* 929 F.2d 974 (4th Cir.1991); *Smith v. Flax,* 618 F.2d at 1067; *Komel v. Jewel Cos.,* 874 F.2d 472, 475 (7th Cir.1989); *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989)(citing *Gairola v. Com. of Virginia Dep't of General Servs.,* 753 F.2d 1281, 1288 (4th Cir.1985)); *United Black Firefighters of Norfolk v. Hirst,* 604 F.2d 844 (4th Cir.1979).

At summary judgment, the non-moving party has an obligation to present evidence to save his or her allegations from the status of speculation, and must respond with *specific facts* showing a genuine issue for trial. Rule 56, Fed.R.Civ.P.; *Celotex Corp. v. Catrett, supra; Felty,* 818 F.2d at 1129–1130; *Gairola v. Com. of Virginia Dep't of General Services,* 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985). Plaintiff has failed to submit sufficient evidence to raise a genuine issue of fact that she was retaliated against; therefore, it is recommended that Defendant's motion for summary judgment as to Plaintiff's retaliation claim be granted.

■ C) **Remaining State Law Claim.** In addition to her federal claims under Title VII and § 1981, Plaintiff has also asserted a pendent state law cause of action for breach of contract (third cause of action).[8] However, if the District Court adopts the recom-

mendations made herein with regard to Plaintiff's federal claims, Plaintiff's pendent state law claim will be the only claim remaining in this lawsuit. When federal claims presented in a case originally filed in federal court are dismissed, any remaining state claim should also be dismissed, without prejudice, for resolution in state court under the general doctrine developed in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *See In Re Conklin,* 946 F.2d 306, 324 (4th Cir.1991); *Nicol v. Imagematrix, Inc.,* 767 F.Supp. 744, 746, 749 (E.D.Va.1991); *Mills v. Leath,* 709 F.Supp. 671, 675–676 (D.S.C.1988); *Carnegie–Mellon v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Taylor v. Waters,* 81 F.3d 429, 437 (4th Cir.1996). Dismissal of any remaining state cause of action will not only allow the more appropriate court to rule on this exclusively state issue, but will not prejudice the parties, as all discovery has been completed and the parties may seek a fast track for resolution of this claim at the state level. *See* Rule 40(c), S.C.R.C.P.

Therefore, it is recommended that to the extent Plaintiff has asserted a state law cause of action, such remaining state law cause of action should be dismissed, without prejudice, in order that it may be more properly pursued in a state forum. *United Mine Workers of America v. Gibbs, supra; Nicol v. Imagematrix, Inc., supra; In Re Conklin, supra; Carnegie–Mellon University v. Cohill, supra; Mills v. Leath, supra.*

### *Conclusion*

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted** with regard to Plaintiff's Title VII and § 1981 race discrimination and retaliation claims. It is further recommended that Plaintiff's remaining state law cause of action be **dismissed,**

---

8. Plaintiff has withdrawn her causes of action for defamation (fourth cause of action) and outrage (fifth cause of action). *Memorandum in Opposi-* *tion to Defendant's Motion for Summary Judgment,* p. 10.

without prejudice. This will allow Plaintiff to pursue her state law claim in state court, which is the more appropriate forum for determination of this issue.

July 31, 1997